The People of the State of New York, Respondent, v. Joshua
S. Helmer, Appellant.

*Circumstantial evidence — "exhibiting false books" — conviction thereof — judge's*
*charge.*

To justify a conviction of a crime upon circumstantial evidence, not only must
the facts proved be consistent with and point to the defendant's guilt beyond a
reasonable doubt, but they must also be inconsistent with his innocence.

Under an indictment charging the president of a banking corporation with know-
ingly exposing and exhibiting false books of the bank to a public officer
authorized to investigate the affairs of the bank, with intent to deceive
him, the evidence tended to show that there were false entries in certain of
the books of the bank and that the defendant exhibited such books to the
examiner, and that a discrepancy between the balance shown by the books
and the actual cash in the bank was represented by two checks, good
for the amount thereof, drawn by the cashier of the bank, as county treas-
urer of the county of Niagara, upon other banks, and placed in his own
bank by the cashier to cover moneys which he had withdrawn from his bank
for his own use. The defendant knew that these checks had been deposited,
and while the examination was taking place borrowed and placed in the vault,
to be counted by the examiner, $7,000 in currency which, after it was counted,
he returned in the same identical money to the persons from whom he had bor-
rowed it.

The defendant had general supervision of the affairs of the bank and attended
to its correspondence, but not to the entries made in the books of account
thereof.

*Held,* that there was a question of fact for the jury whether the defendant know-
ingly, feloniously and wrongfully exhibited to the examiner the cash book
containing false entries as to the amount of cash in the bank, with the intent
to deceive him.

The cashier of the bank, who had been misappropriating the funds, had forged,
in order to cover up his defalcations, a number of promissory notes which he
entered in the discount book of the bank. The president was not aware of this
defalcation, and when asked by the examiner for permission to take the sus-
pected paper away from the bank under a promise to return it, refused to give
such consent without authority from the directors of the bank.

*Held,* that this refusal on the part of the president was not any evidence of guilt
on his part.

A misdirection in the charge to the jury, upon one point, is sufficient to justify
the granting of a new trial in a criminal action, although the jury might prop-
erly have found their verdict upon another point as to which there was no
misdirection.

Appeal by the defendant, Joshua S. Helmer, from a judgment
of the Court of Oyer and Terminer in favor of the plaintiff, held

in and for the county of Niagara, rendered on the 24th day of September, 1894, convicting the defendant of the crime of knowingly exhibiting false books to a public officer and sentencing him to imprisonment at hard labor for a period of five years; also, from an order made at such court of Oyer and Terminer denying the defendant's motion for a new trial.

*E. M. Ashley* and *Tracy C. Becker*, for the appellant.

*P. F. King, District Attorney*, for the respondent.

LEWIS, J.:

It was charged in the indictment that on the 21st day of September, in the year 1893, the defendant was, and had been for several years prior thereto, the president and a director of the Merchants' Bank of the city of Lockport, a State bank doing business in said city; that there was kept by said bank, among others, the following books, to wit: A teller's tickler, or cash book, which purported to show the correct amount and kinds of cash on hand in said bank at the close of business on the 20th day of September, 1893; a register of drafts, which purported to show the date, number, amount and the party in whose favor each draft was drawn by said bank upon its New York correspondent up to the day mentioned; and also a discount book, in which was purported to be entered the kind of paper, the date, name of the maker and indorser, the amount, and the time and place of payment of all the commercial paper discounted by the bank, and the aggregate amount of discounts up to the close of the day mentioned; that the books aforesaid, with others, each contained false and forged entries, and that the defendant on the 21st day of September, 1893, feloniously and knowingly did present, expose and exhibit said false books to a Mr. Clark, who was duly authorized to examine the affairs of the bank and who was at the bank on that day for that purpose. He was charged in other counts with having aided, assisted and advised other officials in the bank in presenting false books.

The only books which it will be necessary to consider in disposing of this appeal are the cash and discount books and the draft register. There was evidence tending to show that there were false entries in each one of these books by which they failed to show the true con-

dition of the bank at the close of business on the 20th day of September, 1893. The evidence, we think, fairly established that the defendant exhibited the books mentioned to the examiner. It was not shown that he personally called the examiner's attention to the books nor handed them to him, but they were there upon the tables of the bank accessible to the examiner, and the defendant was in and about the bank and knew the purpose of Mr. Clark's visit. It was incumbent upon the People to show that the defendant knew that these books contained false and fraudulent entries and that defendant presented or exposed them to the examiner with intent to deceive him.

It was made to appear by entries in the cash book that the bank had 'on hand at the close of business on the twentieth of September the sum of $13,705.55, when in fact the actual amount was only $11,705.55. The difference was represented by two checks drawn by the cashier, Mr. Arnold, as county treasurer of the county of Niagara, upon other banks in Niagara county, one for $4,000 and the other for $3,000. These two checks had been placed in the bank by Mr. Arnold to cover moneys which he had drawn from the Merchants' Bank for his own use. The defendant knew that the checks had been so deposited, and while Mr. Clark was engaged in counting the cash actually in the bank, the defendant left the bank and borrowed $7,000 in currency, which he caused to be placed in the vault of the bank, to be delivered to Mr. Clark to be counted as cash actually in the bank, and, after it had been so counted, and on the same day, the defendant returned the identical money to the persons from whom he had borrowed it. There was at the time a sufficient amount of county money on deposit in the banks upon which these checks were drawn to pay them, and they would have been paid at any time had they been presented. They were banks which had been duly designated as depositories of the county funds. There was at this time the well-known stringency in the money market, and Mr. Arnold had been requested by the officers of said banks to favor them and not draw out the county deposits more than was absolutely necessary. There was nothing in the use made of these checks tending to show an intention on the part of either the defendant or Mr. Arnold to defraud the bank. The defendant had the general supervision over the affairs of the bank and attended to

its correspondence. He had nothing to do with keeping the books or making entries therein. While he unquestionably had the right to examine the bank books it was not shown to be a part of his duties, and obviously it would have been impracticable for him to have done so to any extent and performed his duties as president.

We assume, in deciding the case, that it was a question for the jury to determine whether the defendant knowingly, feloniously and wrongfully exhibited the cash book containing false entries as to the amount of cash in the bank to Mr. Clark with intent to deceive him. It cannot be said that his guilt in that respect was established beyond a reasonable doubt. To justify a conviction upon circumstantial evidence, not only must the facts proved be consistent with and point to the defendant's guilt beyond a reasonable doubt, but they must be inconsistent with his innocence. (*People* v. *Stokes*, 2 N. Y. Cr. Rep. 382.) After a careful examination we have failed to find any evidence tending to show that the defendant had any knowledge or cause for suspicion that there were ever any false entries made either in the discount book or the draft register. The office of the discount book was to show what commercial paper had been discounted by the bank. When Mr. Clark, the examiner, called for the discount book, Mr. Arnold informed him that there was a large number of promissory notes which had been discounted by the bank which had not been entered in the discount book, and at the suggestion of Mr. Clark the cashier proceeded to write them up. Arnold had been misappropriating the funds of the bank to a large amount, and to cover up his defalcation had forged a number of promissory notes amounting to about $35,000. He entered in the discount book this forged paper, together with about $50,000 of genuine notes which had been discounted and had not been entered in the discount book. After entering the genuine and forged paper Arnold delivered the notes and the book to Mr. Clark; defendant was not present at the time. The defendant was ignorant of Arnold's defalcation and knew nothing about this forged paper. When Clark came to examine the forged paper he suspected its genuineness and called the defendant's attention to the matter. There was an absence of any evidence that the defendant saw the discount book while Arnold was engaged in entering the notes, or knew at any time what entries

he had made therein until Clark called to his attention his suspicions about the paper. Arnold was not then in the bank. When he returned the defendant interviewed him and soon learned by confession of Arnold that he had been guilty of forging the paper.

Mr. Arnold was called as a witness by the People and testified that he was guilty of forging the paper, but that the defendant knew nothing of it. Mr. Clark asked defendant's permission to take the suspected paper away from the bank, promising to return it in four or five days. To this the defendant objected, saying that he had no right to consent to it without being authorized so to do by the directors of the bank. Mr. Clark suggested that he at once call a meeting of the directors, and the defendant informed him that he knew that there was not a quorum of the directors at that time in the city. After the defendant's attention was called to the forged paper the discount book, so far as appears from the evidence, was not examined or referred to by the examiner.

Our attention is called by the learned counsel for the People to the refusal of the defendant to permit Mr. Clark to take the suspected paper away from the bank as evidence tending to show that he was aware of its being forged. We fail to see in his refusal the slightest evidence of guilt on his part. There was at that time simply a suspicion that the paper was forged, for this occurred before the confession of Arnold. If it was forged the defendant did not know who committed the forgery. The paper had been presented by a man who had been, up to that time, a trusted officer of the bank; Arnold had been connected with the bank for many years in different capacities for a longer time than the defendant had, and had, up to that time, enjoyed the unquestioned confidence not only of the officers of the bank but of the community. He was serving his third term as treasurer of the county of Niagara. The defendant was suddenly confronted with the fact that the cashier had presented this suspected paper as genuine. It was most natural and entirely proper for him to reply to the request of Mr. Clark as he did. He naturally wanted to see the cashier and ascertain what he had to say about the paper while it was in the bank. When he learned from Arnold that he had been guilty of forging the paper and was a defaulter the defendant at once called in another director of the bank and they succeeded in inducing Mr. Arnold to transfer

real estate and securities to an amount which nearly or quite indemnified the bank against loss. This is also urged by the district attorney as evidence tending to show guilt on the part of the defendant. We do not so consider it. It was, we think, entirely proper for the defendant to seek to indemnify the bank as he was shown to have done.

There was evidence finding to show that Mr. Arnold had filled out three several drafts at different times theretofore upon a New York bank which was the correspondent of the Merchants' Bank and presented them to the defendant for his signature and defendant signed them. Two of these drafts were for $1,200 each and the third one was for the sum of $2,000. . The cashier in entering them in the draft register, instead of stating the true amounts, entered one for the sum of $200, another for $23.50 and the third for $15.76. By making these false entries it appeared by the draft register that the Merchants' Bank had on deposit with its New York correspondent a larger amount of money than it actually had, to wit, the difference between the sums actually mentioned in the drafts and the entries made in the draft register, and these were the errors appearing in the draft register. The defendant had nothing to do with making these entries, and there was an absence of any evidence tending to show that he ever had any knowledge or any grounds of suspicion that there were false entries in the draft register.

At the close of the charge to the jury the defendant's counsel requested the court to charge the jury that there was no proof sufficient to warrant a conviction that the defendant knew of any false, forged or altered entry in the discount book when it was presented or exhibited to Clark. The court replied : " I decline to change my charge in regard to the discount book." It appears by reference to the charge that the court had not given the instruction requested to the jury, but, on the contrary, had submitted to them the question whether the defendant knew of these false, forged and counterfeit notes, and that they had been entered upon the discount book. There was not, as before stated, any evidence that the defendant did know of the forged notes or of the entries upon the books, but the facts and circumstances as related by the witness negatived any such claim.

Counsel for the defendant submitted a like request as to the draft register. The court replied that that was a question for the jury, and that he would not change the charge in that regard. The jury had not been charged as requested, but the court had submitted to it the question as to whether there were false entries in that book to the knowledge of the defendant, and whether he was connected in any manner with the presentation of the book to Mr. Clark.

Defendant's counsel requested the court to charge the jury that there was no proof sufficient to warrant a conviction that the defendant presented or exhibited the draft register to Clark. The court declined to change its charge in that respect. Neither the request nor the substance of it had been charged. The only evidence upon the subject of the draft register being submitted to Mr. Clark came from Clark himself. He testified that he did not examine it at any time, and did not call for the draft register, and that the entries in the register did not enter into any part of his examination.

We are of the opinion that the substantial rights of the defendant were prejudiced by the failure of the court to comply with the requests specified. The facts developed by the evidence as to the forging of the notes and their entry in the discount book and the false entries in the draft register presented questions of much greater moral turpitude than the facts as to the entries in the cash book. If the defendant exhibited or caused to be exhibited to Mr. Clark the discount book with knowledge of the entry therein of these forged notes, his guilt was established beyond any reasonable doubt, and the same may be said of the draft register. The People having failed to connect the defendant in any way with these false entries or with the presentation of these books with knowledge, he was entitled to have that branch of the case taken from the jury. A "misdirection even upon one point is sufficient, although the jury may have properly found their verdict upon another point, as to which there was no misdirection." (3 Whart. Cr. Law [7th ed.], § 3248.)

Because of the errors mentioned the judgment and order appealed from should be reversed and a new trial granted.

DWIGHT, P. J., and BRADLEY, J., concurred; WARD, J., not sitting.

Judgment and conviction reversed and a new trial granted.