(13 App. Div. 426.)

## PEOPLE v. HELMER.

(Supreme Court, Appellate Division, Fourth Department. January 27, 1897.)

1. BANKS AND BANKING—EXHIBITION OF FALSE BOOK—WHAT CONSTITUTES FALSITY.

A cash book falsely stating the amount of cash in the bank at the close of business on the day preceding an examination of the bank is a "false book" (Pen. Code, § 592), though on the day of the examination the bank president borrowed for a few hours and put into the bank enough cash to make up the amount stated by the cash book.

2. SAME—KNOWLEDGE OF FALSITY OF BOOKS.

Knowledge by a bank president of the falsity of a book purporting to state the amount of cash in the bank is shown by evidence that during an examination by a bank examiner the president borrowed enough cash to make up the amount stated by the book, exhibited it to the examiner as cash on hand, and, as soon as the examination was finished, returned the identical money to the banks from whom he borrowed it.

3. SAME—WHAT CONSTITUTES EXHIBITION OF BOOKS.

A bank president "exhibits" the books of the bank to a bank examiner, so as to be liable for knowingly exhibiting false books (Pen. Code, § 592), where the president was in the bank when the examiner called to examine the books, and knew the object of his visit, though he did not personally show the books.

4. SAME—INDICTMENT—FOLLOWING STATUTORY WORDS.

An indictment under Pen. Code, § 592, forbidding the exhibition of false books to a public officer authorized to examine into the affairs of a corporation, "with intent to deceive him in regard thereto," is sufficient where it charges the exhibition to a bank examiner of a book falsely stating the amount of cash in the bank "with intent to deceive him," though it omits the statutory words "in regard thereto."

5. SAME—ENTRY OF CHECKS AS CASH.

On the trial of a bank president for knowingly exhibiting to a bank examiner a cash book in which checks on other banks were falsely entered as cash on hand, evidence that other banks ordinarily carried such checks on their books as cash is inadmissible on the question of intent, where it appears that such was not the practice of defendant's bank.

6. SAME—LONG-STANDING FALSITY.

On such a trial it is not error to refuse to instruct that if the cash book was kept in the same manner in which it had been kept and presented to bank examiners for years the book was not false, since the offense is not excused by the fact that the falsity was of long duration.

7. TRIAL—INSTRUCTIONS—REFERENCE TO OPINION OF APPELLATE COURT.

It is not error for a trial court to refer in the charge to the fact that the general term said on a former appeal that there was sufficient evidence to satisfy the jury on a certain issue, where that issue was fairly left to the jury, and it is not asserted that the evidence was different from that which was before the general term, since the statement was no more than a ruling that as a matter of law the evidence on that issue was sufficient to be submitted to the jury.

Appeal from court of sessions, Niagara county.

Joshua S. Helmer was convicted of the crime of having, as president of a corporation, knowingly exhibited a false book to a public officer authorized to investigate the affairs of said corporation, with intent to deceive him in regard thereto. From the judgment of conviction, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

March 1, 1890, the Merchants' Bank of Lockport, N. Y., was incorporated, pursuant to the statutes of this state, with a capital stock of $100,000, immediately began business, and continued until October 6, 1893, when it became in-

solvent, a receiver was appointed, and subsequently it was dissolved because of its insolvency. During the existence of the corporation the defendant was its president and chief financial officer, and John J. Arnold was its cashier. From January 1, 1885, to December 31, 1893, for three terms, John J. Arnold was the treasurer of the county of Niagara, and deposited the money of the county in the Merchants' Bank of Lockport, Bank of Suspension Bridge, Cataract Bank, and with S. Curtis Lewis, a private banker of Lockport, N. Y. In 1893, Benjamin S. W. Clark was one of the bank examiners of the state of New York, and September 18, 1893, he was, by a commission signed by the superintendent of the bank department, and sealed with the seal of that department, authorized and required to examine into the affairs of the Merchants' Bank of Lockport, N. Y., and report its condition as soon as practicable to the bank department. Pursuant to this commission, Mr. Clark began an examination of the bank when it opened for business on the morning of September 21, 1893, at which time the defendant was present. In April, 1894, at a court of oyer and terminer, an indictment was found charging the defendant with having, September 21, 1893, knowingly exhibited to the bank examiner the following false and forged books, papers, and vouchers: (1) Teller's tickler; (2) statement book; (3) general journal; (4) register of drafts; (5) register of discounts; (6) report of New York correspondent; (7) promissory notes. Section 592 of the Penal Code, under which the indictment was found, provides: "Sec. 592. Frauds in Procuring Organization of Corporation, etc.—An officer, agent or clerk of a corporation, or the persons proposing to organize a corporation, or to increase the capital stock of a corporation, who knowingly exhibits a false, forged or altered book, paper, voucher, security or other instrument of evidence to any public officer or board authorized by law to examine the organization of such corporation, or to investigate its affairs, or to allow an increase of its capital, with intent to deceive such officer or board in respect thereto, is punishable by imprisonment in a state prison not exceeding ten years." In September, 1894, the defendant was convicted upon the indictment before an oyer and terminer, but the judgment was reversed in March, 1895. 85 Hun, 530, 33 N. Y. Supp. 524. In November, 1895, the defendant was retried in the court of sessions, and again convicted, and from the judgment entered this appeal is taken.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, and GREEN, JJ.

Tracy C. Becker, for appellant.

P. F. King, for the People.

FOLLETT, J. On the first trial the defendant's counsel requested the court to charge that the evidence was insufficient to justify a verdict that the defendant knew that there were false, forged, or altered entries in the discount book or in the draft register when they were exhibited to the bank examiner, which requests were refused, and because of the refusal a new trial was granted.

On the trial under review a conviction was sought solely on the ground that the defendant knowingly exhibited to the bank examiner the teller's tickler or cash book, containing false entries in respect to the amount of currency on hand. The question whether other false, forged, or altered books or papers were exhibited by the defendant to the bank examiner was withdrawn from the jury. To convict the defendant on the issue submitted to the jury, it was necessary to establish (1) that the entries in the teller's tickler were false; (2) that the defendant knew that the entries were false; (3) that the defendant exhibited the teller's tickler to the bank examiner. The teller's tickler or cash book was kept by the teller, and purported to show the amount of cash, coin and currency, on hand at the close of every day's business. Under the

head of the abbreviation "Cy." (denoting currency), there should have been carried only national bank notes and United States notes. The following is a copy of the entry in the teller's tickler which purported to show the amount of coin, currency, and items carried as cash in the bank at the close of business on September 20, 1893:

Exhibit No. 5.

September 20, 1893.

| | | | |
|---|---|---|---|
| Cy ............................................................ | | | $14,620 00 |
| F. ctl ...................................................... | $ | 380 00 | |
| | | 7 65 | |
| | | 15 85 | |
| | | | 403 50 |
| Gold ......................................................... | $2,364 00 | | |
| Silver V ................................................... | 800 00 | | |
| Silver O ................................................... | 170 00 | | |
| Dimes ....................................................... | 160 00 | | |
| | | | 3,494 00 |
| | $ | 5 00 | |
| | | 78 00 | |
| | | 78 92 | |
| | | 4 00 | |
| | | 4 30 | |
| | ʻ | 25 00 | |
| | | 15 25 | |
| | | | 210 47 |
| | | | $18,727 97 |
| Over ........................................................ | $ | 14 90 | |
| Exch ........................................................ | | 7 52 | |
| | | | 22 42 |
| | | | $18,705 55 |
| | | | 18,705 62 |
| | | | $ 07 |

When the bank opened for business on the morning of September 21, 1893, the teller's tickler showed that there was then on hand in the bank $18,705.55 in cash, of which sum $14,620 was represented to be currency, and was entered in the teller's tickler as follows:

Cy ......................................................................$14,620.00

In fact there was on hand only the sum of $7,620 in currency, the remainder—$7,000—being represented by two checks, one for $4,000 and one for $3,000, drawn by Arnold, as county treasurer, in favor of the Merchants' Bank of Lockport, on banks in which the county was supposed to have funds to its credits. These checks were not produced on the trial, and although the one for $3,000 had been carried as a cash item since the bank was incorporated, and the one for $4,000 since July 5, 1893, neither the president, cashier, nor the teller was able to tell on what banks they were drawn, but all agreed that they were never presented to the drawees, and were not intended to be. That the entry, "Cy., $14,620.00," did not state the amount of currency on hand is apparent, and that the entry was false was established by the most convincing evidence, and,

indeed, was not denied by the defendant, who testified in his own behalf on the trial. It is urged by the defendant's counsel that placing $7,000 in the vault of the bank on the morning of September 21, 1893, made the entry in the teller's tickler true in fact. This act was a mere subterfuge, designed to conceal the fact that the entry in the book, "Cy., $14,620.00," was false; and, besides, the entry did not purport to state the amount of currency in the bank after the transaction of business on the 21st of September, 1893, but the amount of currency in the bank at the close of business September 20, 1893, and the amount of currency in the bank before beginning business on the morning of September 21, 1893. That the defendant knew that the entry, "Cy., $14,620.00," was false, is established by his conduct, as testified to by himself. He testified that when the bank opened for business on the morning of September 21, 1893, the bank examiner came in to examine into the condition of the bank, and that he called for the cash. All the cash on hand was brought out, but the two checks, one for $4,000 and the other for $3,000, were not presented, and thereupon the defendant went personally and borrowed $4,000 in currency of the Farmers' & Mechanics' Savings Bank of Lockport, and $3,000 in currency of S. Curtis Lewis, a private banker, which he placed in the vault of the Merchants' Bank of Lockport, without the knowledge of the bank examiner, and then produced it as currency on hand at the close of business September 20, 1893, and at the beginning of business September 21, 1893; and thus the amount of currency apparently on hand compared with the entry in the teller's tickler, and as soon as the examination of the bank was completed the defendant, on the same day, and within two or three hours afterwards, returned the identical bills to the banks from which he had borrowed them. It is difficult to see how, under this state of evidence, the correctness of which is conceded by the defendant, it can be contended that the defendant did not know of the entry in the teller's tickler, and did not know it to be false.

Did the defendant exhibit this book to the bank examiner? All the evidence is to the effect that this was one of the regular books of the bank; that the examiner called for the books and the cash; that the defendant was present, and was, indeed, the only executive officer then present, the cashier being absent when the books were produced. It is entirely immaterial whether the defendant personally handed the book to the examiner, or whether it was pointed out by some one of the subordinates in the bank. The fact that the examiner was to examine the teller's tickler was known to the defendant, as is evinced by his conduct in borrowing temporarily sufficient currency to make the entries therein apparently true. The testimony given by and in behalf of the defendant, excluding that given by the people, is sufficient to establish the issue that the defendant knowingly exhibited to the bank examiner the teller's tickler, which contained a false entry, with intent to deceive the examiner in respect to the financial condition of the bank. People v. Helmer, 85 Hun, 530, 33 N. Y. Supp. 524.

It is insisted that the indictment is defective, because of the omission therefrom of the words of the statute, "in respect thereto." The statute makes it a crime to exhibit to a public officer a false book "with intent to deceive such officer or board in respect thereto." The indictment charges:

"That at the time and place aforesaid, to wit, on the said twenty-first day of September, A. D. 1893, at the city of Lockport aforesaid, said book, called the 'Teller's Tickler,' was then and there false and forged, among other things, in the following particulars, to wit: It contained entries in script and figures showing the cash on hand at the close of business on the twentieth day of September, 1893, to be $18,705.55, whereas, in truth and in fact, the amount of cash on hand in said bank at the close of business on said twentieth day of September, 1893, was not $18,705.55, but was, then and there, only $11,705.55."

The indictment closes with the charge that the teller's tickler and other books were exhibited by the defendant to the bank examiner with the intent to deceive him, contrary to the form of the statute in such cases made and provided. These allegations describe in plain terms the act condemned by the section, and the offense of which the defendant was convicted. It is not necessary that the offense should be charged in the language of the statute, but it is sufficient if the criminal act is set forth by words which plainly describe the offense, though words other than those of the statute are used. Code Cr. Proc. § 284; People v. Conroy, 97 N. Y. 62; People v. Clements, 107 N. Y. 205, 13 N. E. 782; Whart. Cr. Pl. & Prac. § 236. The defendant, who was sworn in his own behalf, was asked by his counsel:

"Q. You may state whether or not all the banks of the city were receiving on deposit, and carrying as cash, checks of private individuals at that time. Mr. King: I object to it as incompetent and irrelevant. The Court: How is that competent? Mr. Ashley: I think it has some bearing upon the question of intent here. The Court: I will sustain the objection. Mr. Ashley: Note an exception."

It is urged that this was an erroneous ruling. The answer is that the checks drawn on other banks and paid by the Merchants' Bank and carried into the succeeding day's business were not carried under the head of currency on the teller's tickler, but were carried among other items, and in the statement of September 20, 1893, were carried in the items aggregating $210.47. The bank examiner testified—and in this he was not disputed—that this sum was made up as follows:

Debit item against Davison........................................$   5  00
Debit items against J. H. Helmer.................................. 78  00
Checks drawn on other banks...................................... 127  47

$210  47

Thus it appears that defendant's bank did not carry in the statement of September 20, 1893, valid business checks drawn on other banks under the head of currency, nor did it in the quarterly statement showing the condition of the bank on the morning of September 19, 1893,—Exhibit 9,—and, besides, it was not proposed to show by the question that it was the custom of other banks to

carry valid checks under the head of currency, nor was it sought to show that it was the custom of other banks to carry fictitious checks under that head.    The ruling challenged was not erroneous.

The court was requested to charge by the defendant's counsel:

"I ask the court to charge the jury that if they find that the teller's cash book was kept in the same manner in which it had been kept for years, and in the manner in which it has always theretofore been presented to the officers or assistants of the banking department, then the book was not false."

This instruction was refused, and an exception taken.    There was evidence that these and similar fictitious checks drawn on other banks in favor of the Merchants' Bank by the county treasurer had, from time to time, during several years, entered into the account as currency.    The fact that the officers of this bank had been accustomed for several years to make and exhibit false entries in their books was no defense for making and exhibiting the particular false entry charged in the indictment.    The fact that a person has committed a series of offenses is not an excuse for committing the last of a series for which he is indicted.

The defendant took the following exception, which, it is urged, presents an error for which the judgment should be reversed:

"May it please the court, I desire to except to that portion of your charge in which you say, in substance, that the decision of the general term in this case is to the effect that the testimony is sufficient to authorize the finding that he presented the teller's cash book to Clark."

When this case was before the general term (85 Hun, 530, 33 N. Y. Supp. 524), it was held:

"The only books which it will be necessary to consider in disposing of this appeal are the cash and discount books and the draft register.    There was evidence tending to show that there were false entries in each one of these books, by which they failed to show the true condition of the bank at the close of business on the 20th day of September, 1893.    The evidence, we think, fairly established that the defendant exhibited the books mentioned to the examiner.    It was not shown that he personally called the examiner's attention to the books, nor handed them to him, but they were there upon the tables of the bank, accessible to the examiner; and the defendant was in and about the bank, and knew the purpose of Mr. Clark's visit.    It was incumbent upon the people to show that the defendant knew that these books contained false and fraudulent entries, and that defendant presented or exposed them to the examiner with intent to deceive him."

The language excepted to is contained in the following paragraph of the charge, the words objected to being italicized:

"It is necessary for the prosecution to prove that the defendant knowingly presented these books or this book to the bank examiner.    There is no very direct evidence that he did personally present this book, or call the bank examiner's attention to these items of this date, or that he was active in exhibiting this book; but it is shown these books were open there for the inspection of the bank examiner; that the defendant was in and about the bank; that he knew the purpose of the visit of the examiner; *and, as the court at general term has said, in this case, that was sufficient to satisfy the jury that there was an inspection or presentation of the books of the examiner.*    Now, there is no direct proof in this case that the defendant did knowingly present these books with intention to deceive, or, as the law terms it, with a 'felonious intent to deceive' this public officer, this bank examiner.    I say there is no direct evidence of that fact.    The prosecution seek to establish that charge by what is designated 'circumstantial evidence.' "

After explaining to the jury the difference between direct and circumstantial evidence, the court concludes this branch of the charge as follows:

"If, after considering this circumstantial evidence as to his knowingly presenting this book with a felonious intent to deceive the bank examiner; if, after considering this circumstantial evidence, which has been given in this case in that way,—it becomes satisfactory to you, and you believe the circumstances point and establish beyond a reasonable doubt the guilt of this defendant, then you may treat that evidence as satisfactory and conclusive to your minds as though it were direct evidence. So it leaves, gentlemen of the jury, for your consideration, this single proposition: First, as to whether or not the defendant did present to the bank examiner this book which contained these false entries with a felonious intent to deceive him in regard thereto."

By these instructions the question whether the defendant knowingly exhibited the teller's tickler to the bank examiner was left as a question of fact to the jury. There was no intimation in the charge that the jury was bound by the decision of the general term. But it was a statement that the circumstantial evidence on the former trial, which is not asserted to be different from that given on the present trial, was sufficient to authorize the jury to find that the defendant exhibited the statement. The fact that the case was submitted to the jury amounted to a ruling that, as a matter of law, the evidence was such that the jury was authorized to render a verdict against the defendant.

September 27, 1893, the defendant and John J. Arnold verified and mailed a quarterly report to the bank examiner, purporting to show the condition of the bank on the morning of September 19, 1893, which report was received in evidence without objection. The statement in the teller's tickler purported to show the condition of the bank at the close of business on September 20, 1893. The quarterly report, under the head of "Resources," contains the following items:

11. U. S. legal tender notes and circulating notes of national banks... $14,118 00
12. Cash items, viz. bills and checks for next days' exchanges, $213.10.　　　213 10

This quarterly report shows the rule and practice of the bank department as to the head under which checks on other banks should be carried, and shows that the rule of the department was known to the defendant. It appears from this report that the defendant knew that only United States notes and the notes of national banks should be carried as currency, and by undisputed testimony it was shown that the two checks which entered into the statement of September 20, 1893, made up a part of item No. 11 in the quarterly report, and it was competent to show, as bearing on defendant's intent, that he had made a false statement similar to the one charged in the indictment. The court refused to permit the jury to take the quarterly report to their room when considering the verdict, and they were instructed that the defendant was not on trial for making a false quarterly report, but that making such report was a circumstance which might be considered. No exception was taken by the defendant to the instructions of the court in respect to the quarterly report and its effect, and the record

presents no error in this respect, and, besides, it is impossible to see that the instructions given could have in any way prejudiced this defendant.

The command of section 542 of the Code of Criminal Procedure is:

"Sec. 542. After hearing the appeal the court must give judgment, without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties."

The judgment should be affirmed.    All concur.